# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

GERALD PITTMAN,

    Plaintiff,                      CASE NO. 07-CV-14892

v.                                DISTRICT JUDGE JOHN CORBETT O'MEARA
                                  MAGISTRATE JUDGE CHARLES BINDER

KOLB, Officer,

    Defendant.
                              /

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. 18)

**I.    RECOMMENDATION**

It is **RECOMMENDED** that Defendant's motion be **DENIED.**

**II.    REPORT**

By order of U.S. District Judge John Corbett O'Meara, this *pro se* prisoner civil rights case was referred to the undersigned Magistrate Judge for general case management on October 16, 2007. (Dkt. 3.) After screening the complaint, Defendants B. Alexander and J. Sciotti were terminated from the case on January 18, 2008. (Dkt. 12.) Therefore, Defendant Kolb is the sole remaining Defendant. Defendant Kolb has filed this motion for summary judgment (Dkt. 18,) Plaintiff has responded (Dkt. 20,) and Defendant has replied. (Dkt. 21.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

### A. The Complaint

Plaintiff alleges that Defendant Kolb had taken his food tray into the cell where the inmate has MRSA (methicillin-resistant staphylococcus aureus) and then brought it into Plaintiff's cell without even changing gloves. Plaintiff alleges that Defendant Kolb stated, "Yeah Jewboy Pittman I'm taking your precious kosher trays to the MRSA cell with me then I'll feed you."(*Id.* ¶ 15, 17, 48) Plaintiff further avers that Defendant Kolb dropped food from his tray onto the dirty floor where "rodents roam" and "bacteria colonize" and then placed the food back on his tray. (*Id.* ¶12.) Plaintiff alleges that Defendant Kolb's actions violate his Eighth Amendment rights and his First Amendment rights against retaliation. (*Id.* ¶48, 76, 78, 79.)  Plaintiff asserts that he has exhausted administrative remedies. (*Id.* ¶¶54-73.)

### B. Analysis and Conclusions

#### 1. Qualified Immunity and Summary Judgment Standards

Defendant argues that he is entitled to qualified immunity. (Dkt. 18 at 5-6.) The Supreme Court has explained that, pursuant to the defense of qualified immunity,"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*  Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts.  'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene*

*v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step

3

two unless a genuine issue of fact exists under step one. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### a. Whether a Constitutional Violation Occurred

Plaintiff alleges that Defendant Kolb's statement that he was intentionally taking Plaintiff's tray into the cell where a MRSA infected inmate was present and his actions in doing so violated his Eighth Amendment rights and his First Amendment right against retaliation. (Dkt. 1, ¶ 15, 17, 48, 76, 78, 79.) For the reasons stated below, I suggest that Plaintiff has come forward with sufficient evidence to survive summary judgment as to the Eighth Amendment and First Amendment claims.

### i. Eighth Amendment

Plaintiff has alleged that Defendant Kolb intentionally contaminated or exposed his food tray to potential contamination by taking it into the cell of an inmate who was infected with MRSA. (Dkt. 1, ¶ 15, 17, 48.)

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments

4

Clause of the Eighth Amendment to the Constitution. The standard for deliberate indifference is two-pronged, consisting of both a subjective and an objective element. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271, 279 (1991). In order to satisfy the objective component of an Eighth Amendment claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994); *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

Exposure to serious communicable diseases, including MRSA, may form the basis of a deliberate indifference claim under the Eighth Amendment where there is an "unacceptable risk of serious damage to [the prisoner's] future health." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)(environmental smoke); *Kimble v. Tennis*, No. 4:CV-05-1871, 2006 WL 1548950 (M. D. Pa. June 5, 2006)(placement of inmate who had MRSA into the general population stated an Eighth Amendment claim).

Defendant argues that Plaintiff cannot show that he was exposed to a substantial risk of harm because each piece of food on a kosher tray, which Plaintiff receives, is individually wrapped. (Dkt. 18 at 4.) Defendant further argues, as to the "October 16 incident, where a wrapped piece of food hit the floor, [that] did not expose plaintiff to any danger [and a]t most, he was deprived of that piece of food..." (*Id.*) I suggest that Defendant is correct that the October 16 occurrence did not pose any risk, let alone a substantial risk of harm to Plaintiff; thus it will not serve as a basis for Plaintiff's Eighth Amendment claim. In addition, even Plaintiff's allegations imply that the dropping was not intentional and mere negligence cannot state a claim for deliberate indifference. *Wilson, supra*.

5

As to the October 22 incident, Defendant contends that there was no risk of harm because each food item was individually wrapped, Defendant "Kolb had no contact with the MRSA-infected prisoner" and "Kolb's placing a food bag into the infected prisoner's food slot required touching only the outside of the food slot" so "Kolb did not have contact with any infected surface." (*Id.*). Defendant then concludes that "plaintiff cannot show any real chance of being infected with MRSA that would have had to travel from the infected prisoner to the outside of the food slot to Kolb's gloved hand to the plaintiff's wrapped food items to the plaintiff." (*Id.*)

In an affidavit, Defendant Kolb, denies any intentional dropping of Plaintiff's food and also denies ever calling Plaintiff names or using any derogatory statements towards him. (Dkt. 18, Ex. A ¶¶ 3, 4.) Plaintiff and another witness, Robert Winburn, submitted affidavits supporting Plaintiff's allegations that on October 22, 2007, Defendant Kolb called Plaintiff "Jewboy" and told Plaintiff he would "tak[e] your precious kosher trays to the MRSA cell then I'll feed ya." (Dkt. 20, Ex. A ¶ 4; B ¶ 4.) In addition, Plaintiff and Mr. Winburn contend that the MRSA infected prisoner announced (or yelled) that he was spitting on his food slot so he could infect other prisoners, and that upon hearing this, Defendant Kolb laughed and remarked he was glad he had gloves." (Dkt. 20, Ex A and B, ¶¶ 5.) Both also state that no one disinfected or even ordinarily disinfects the food slots. (*Id.* ¶¶6.)

Defendant Kolb does not directly contradict these statements but instead merely notes that "food slots can be cleaned by the segregation prisoners twice a week when cell cleaning is done on their wing." (Dkt. 18, Ex. A ¶ 7.) Defendant Kolb does not state that the slots were ever cleaned. Defendant Kolb concludes that "there is no need to change gloves after delivering food to an MRSA-contaminated prisoner because no hands touch the food or any contaminated area of the MRSA prisoner or his cell." (*Id.* ¶ 8.) Defendant Kolb does not deny that the food slot was spit

6

upon by the MRSA infected prisoner nor does he deny that Plaintiff's tray passed through the slot that the MRSA contaminated prisoner spat upon. Furthermore, Defendant Kolb addresses only the potential contamination of the food itself; he does not speak to the potential contamination of the wrapping around the food or the tray which is passed through the food slots. Defendant offers no scientific evidence to support the notion that there was "no actual chance of exposure to MRSA." (Dkt. 18 at 3.)

Under these circumstances, I suggest that a genuine issue of material fact remains as to whether Defendant Kolb intentionally exposed Plaintiff's food wrappers or tray to contamination from a prisoner suffering from MRSA.[1] If Plaintiff's evidence were to be believed at trial, I suggest that an Eighth Amendment violation could be found. *Randles v. Hester*, No. 98CV1214, 2001 WL 1667821,*6 (M.D. Fla. June 27, 2001)("there are materially similar cases which proscribe the exposure to of inmates to infectious disease or threat of future ills;...Although the diseases were not HIV or AIDS, they were similarly highly contagious such as hepatitis and sexually transmitted diseases or obviously dangerous conditions likely to produce future harm, such as second-hand smoke...a remedy is required when a guard intentionally exposes an inmate to almost certain infection through contact with contaminated blood of other inmates."); *White v. Hinsley*, No. 05-594-MJR, 2007 WL 611195 (S.D. Ill. Feb. 26, 2007)(claim that Defendant intentionally placed a "spit hood" into Plaintiff's mouth that contained saliva of an inmate known to be infected with Hepatitis C exposed him to substantial risk under Eighth Amendment and thus, survived screening); *Cf. Moore v. Cohn*, No. 1:03-cv-2056-RLY-TAR, 2006 WL 2604596, *3

---

[1] Compare, *Collins v. County of Gloucester*, No. 06-2589(JBS), 2008 WL 1374213, *5 (D. N.J. Apr. 9, 2008)(outside the prison context, recognizing "duty to warn third parties against possible exposure to contagious or infectious diseases," i.e., that "Defendants failed to warn them about MRSA and to take the necessary precautions to prevent the spread of MRSA.")

(S.D. Ind. Aug. 25, 2006)(granting summary judgment on Eighth Amendment claim that presence of bird droppings in housing unit which could cause histoplasmosis and stating that "[p]oisoning the water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might even be if the harm was probabilistic or future rather than certain and immediate. But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not."), *citing Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001).

### ii. First Amendment retaliation

Plaintiff alleges that because of his grievance filed on October 16, 2007,[2] Defendant Kolb intentionally contaminated his food tray on October 22, 2007, in retaliation for having filed grievances. (Dkt. 1, ¶ 48, 17.)

Retaliation based on a prisoner's exercise of his First Amendment rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). A First Amendment retaliation claim consists of three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id*.

Defendant contends that a "reasonable person would not be deterred by the alleged actions of Defendant." Dkt. 18 at 4.) However, I suggest that exposure to MRSA could arguably deter a person of ordinary firmness from filing a grievance. Since the alleged exposure occurred close in time to the grievance having been filed, and Defendant has not raised any alternative non-

---

[2]The October 16 grievance referenced the dropping of Plaintiff's wrapped food items onto the floor of his cell which I suggested did not pose any risk, let alone a substantial risk of harm to Plaintiff under the Eighth Amendment claim. *See, infra*.

8

retaliatory rationale for his conduct (he has simply disagreed that his conduct exposed Plaintiff to harm), I suggest Plaintiff has alleged sufficient facts from which a jury could determine that the motivation, at least in part, for Defendant's actions was retaliation. *See Lane v. Bell*, No. 05-CV-73273-DT, 2007 WL 2463346, *2-3 (E.D. Mich. Aug. 30, 2007)(denying summary judgment where Defendant denied all allegations but temporal proximity raised question of fact whether Defendant forbid copying court documents and issued major misconduct ticket in retaliation).

### B. Clearly Established Right and Reasonable Conduct

As indicated above, I suggest that Plaintiff has proffered sufficient evidence to meet his burden under Rule 56 such that the Eight Amendment and First Amendment claims should proceed to trial. I further suggest that the right to be free from cruel and unusual punishment and the right to exercise First Amendment rights without fear of reprisal are sufficiently clearly established that a reasonable officer would realize that intentional exposure to contagions and such exposure made in response to the filing of grievances would violate these constitutional guarantees.

Even though Plaintiff has not come forward with an exact case on point, where an inmate was intentionally exposed to contamination, "courts have found it unnecessary for a prisoner plaintiff to point to a 'prior case holding the very action in question to be unlawful'" to prove that no reasonable person would have believed his conduct to be lawful. *Randles*, *6 (finding the unlawfulness of intentional exposure to contaminated blood to be so readily apparent that Defendant not entitled to qualified immunity), *quoting Powell v. Lennon*, 914 F.2d 1459, 1464 (11th Cir. 1990)(asbestos exposure).

### 2. Conclusion

For all the reasons stated above, I recommend that Defendant's motion for summary judgment be denied as to both Plaintiff's Eighth Amendment claim and Plaintiff's First Amendment retaliation claim.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                     s/ *Charles E Binder*
                                                     CHARLES E. BINDER
Dated: May 22, 2008                           United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, served on Gerald Pittman by first class mail, and served on U.S. District Judge O'Meara in the traditional manner.


Date: May 22, 2008            By    s/Patricia T. Morris
                                           Law Clerk to Magistrate Judge Binder