UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD PITTMAN,

    Plaintiff,                          CASE NO. 07-CV-14892

v.                                    DISTRICT JUDGE JOHN CORBETT O'MEARA
                                      MAGISTRATE JUDGE CHARLES BINDER
KOLB, Officer,

    Defendant.
                                  /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**
(Doc. 40)

## I.    RECOMMENDATION

For the reasons set forth below, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## II.    REPORT

### A.    Introduction

By order of U.S. District Judge John Corbett O'Meara, this *pro se* prisoner civil rights case was referred to the undersigned magistrate judge for general case management on October 16, 2007. (Doc. 3.) After screening the complaint, Defendants B. Alexander and J. Sciotti were terminated from the case on January 18, 2008. (Doc. 12.) Therefore, Defendant Kolb is the sole remaining Defendant. Defendant Kolb filed a first motion for summary judgment which was denied on July 2, 2008. (Doc. 25.) *Pro bono* counsel was appointed for Plaintiff and an appearance was field on September 9, 2008. (Doc. 27.) Discovery proceeded and Defendant Kolb filed this second motion for summary judgment on June 29, 2009. Plaintiff responded (Doc. 43)

and Defendant replied. (Doc. 45.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the motion is ready for Report and Recommendation without oral argument.

### B. Background

Plaintiff alleges that Defendant Kolb took his food tray into a cell where an inmate with MRSA (methicillin-resistant staphylococcus aureus) was being housed and then brought it into Plaintiff's cell without changing gloves. Plaintiff alleges that Defendant Kolb stated, "Yeah Jewboy Pittman, I'm taking your precious kosher trays to the MRSA cell with me then I'll feed you." (*Id.* ¶¶ 15, 17, 48.) Plaintiff alleges that Defendant Kolb's actions violated his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to not be retaliated against. (*Id.* ¶¶ 48, 76, 78-79.) The remaining claims involve events that took place on October 22, 2007. (Doc. 25.)

Defendant Kolb contends that he is entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff's food tray did not actually enter the MRSA inmate's cell or come into contact with the MRSA inmate and therefore there was no adverse action. (Doc. 40 at 8.) Defendant further argues for summary judgment on Plaintiff's Eighth Amendment claim on the grounds that there was no actual risk of being exposed to MRSA and, even if there were, Defendant was not aware of the risk since the food slots were cleaned regularly by prison porters and Plaintiff did not suffer any physical injury. (Doc. 40 at 9-10.) Finally, Defendant contends that even if a constitutional violation occurred, he is entitled to qualified immunity because Plaintiff has failed to show that he violated a right so clearly established that any official in Defendant's position would have understood that he should have refrained from such conduct. (Doc. 40 at 10-11.)

### C. Motion Standards and Governing Law

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

Defendant asserts that he is entitled to qualified immunity. (Doc. 40 at 10-11.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; trial judges are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, ___U.S.___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . .

4

> Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### D.   Analysis & Conclusions

#### 1.   Whether a Constitutional Violation Occurred

Plaintiff alleges that Defendant Kolb intentionally took Plaintiff's food tray into a cell where a MRSA-infected inmate was present and in doing so violated Plaintiff's Eighth Amendment rights and his First Amendment right against retaliation. (Doc. 1 ¶¶ 15, 17, 48, 76, 78, 79.) For the reasons stated below, I suggest that Plaintiff has come forward with sufficient evidence to survive summary judgment as to the Eighth Amendment and First Amendment claims.

##### a.   Eighth Amendment

Plaintiff has alleged that Defendant Kolb intentionally contaminated or exposed his food tray to potential contamination by taking it into the cell of an inmate who was infected with MRSA. (Doc. 1 ¶¶ 15, 17, 48.) The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The standard for

deliberate indifference is two-pronged, consisting of both a subjective and an objective element. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991). In order to satisfy the objective component of an Eighth Amendment claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

Although Defendant contends that Plaintiff did not suffer any injury because he did not contract MRSA, exposure to serious communicable diseases, including MRSA, may form the basis of a deliberate indifference claim under the Eighth Amendment where there is an "unacceptable risk of serious damage to [the prisoner's] future health." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (environmental smoke); *Wooler v. Hickman County, Kentucky*, No. 5:05CV-247-R, 2008 WL 5412826, at *7 (W.D. Ky. Dec. 30, 2008) ("various federal courts have recognized that 'the risk of contracting MRSA has been specifically identified . . . as the type of condition which may form the basis of a medical indifference claim'"); *Kimble v. Tennis*, No. 4:CV-05-1871, 2006 WL 1548950 (M.D. Pa. June 5, 2006) (placement of inmate who had MRSA into the general population stated an Eighth Amendment claim).

Defendant argues that there was no actual risk of being exposed to MRSA and even if there were, Defendant was not aware of the risk since the food slots were cleaned regularly by prison porters, and Plaintiff did not suffer any physical injury. (Doc. 40 at 9-10.) Specifically, Defendant argues that two newly learned facts in support of his motion require that summary judgment be granted: "(1) the plaintiff's food did not enter the MRSA inmate's cell, and (2) the cell-door food

6

slots in the prison, which is the only contact that Kolb made with the MRSA inmate's cell, are cleaned regularly by prisoner porters." (Doc. 40 at 10.)

I suggest that neither of the proffered new facts are actually "new." Defendant states that Plaintiff's food never entered the MRSA inmate's cell. In his deposition, Defendant described the process of delivering food trays: with gloved hands, Defendant would carry both the MRSA inmate's tray and Plaintiff's tray (each one is wrapped) to the cell area, he would set Plaintiff's tray down, take the MRSA inmate's wrapped food and set it in the MRSA inmate's food slot, the MRSA inmate would grab his food, Defendant would then proceed to Plaintiff's cell, open Plaintiff's food slot and place Plaintiff's tray in the slot, then Plaintiff would grab his food from the slot. (Def.'s Dep., Doc. 40, Ex. A. at 23-24.) Defendant concedes that he did not change his gloves after placing the MRSA inmate's food in the slot but rather used the same gloved hands to pick up and place Plaintiff's food tray in Plaintiff's food slot. (*Id.* at 27.)

As noted in the previous R&R, in his affidavit, Defendant Kolb denies intentionally contaminating Plaintiff's and calling Plaintiff names or using any derogatory statements towards him. (Doc. 18, Ex. A ¶¶ 3, 4.) However, Plaintiff and another witness, Robert Winburn, submitted affidavits supporting Plaintiff's allegations that on October 22, 2007, Defendant Kolb called Plaintiff "Jewboy" and told Plaintiff he would "tak[e] your precious kosher trays to the MRSA cell then I'll feed ya." (Doc. 20, Ex. A ¶ 4; Ex. B ¶ 4.) Plaintiff and Mr. Winburn further contend that the MRSA-infected prisoner announced (or yelled) that he was spitting on his food slot so he could infect other prisoners, and that upon hearing this, Defendant Kolb laughed and remarked that he was glad he had gloves. (Doc. 20, Exs. A and B, ¶ 5; R&R, Doc. 22 at 6.) Both Plaintiff and Mr. Winburn also stated that no one disinfected or even ordinarily disinfects the food slots. (*Id.* ¶ 6.)

7

Plaintiff has further supplemented his version of the events through his deposition testimony. (Doc. 44.) In response to the statements made in the affidavits, the previous R&R noted that:

> Defendant Kolb does not directly contradict these statements but instead merely notes that "food slots can be cleaned by the segregation prisoners twice a week when cell cleaning is done on their wing." (Doc. 18, Ex. A ¶ 7.) Defendant Kolb does not state that the slots were ever cleaned. Defendant Kolb concludes that "there is no need to change gloves after delivering food to an MRSA-contaminated prisoner because no hands touch the food or any contaminated area of the MRSA prisoner or his cell." (*Id.* ¶ 8.) Defendant Kolb does not deny that the food slot was spit upon by the MRSA-infected prisoner nor does he deny that Plaintiff's tray passed through the slot that the MRSA-contaminated prisoner spat upon. Furthermore, Defendant Kolb addresses only the potential contamination of the food itself; he does not speak to the potential contamination of the wrapping around the food or the tray which is passed through the food slots. Defendant offers no scientific evidence to support the notion that there was "no actual chance of exposure to MRSA." (Doc. 18 at 3.)

(R&R, Doc. 22 at 7.) The same can be said of Defendant's current position. Defendant's comment that Plaintiff's food never entered the MRSA cell fails to address the possibility of contamination from the MRSA inmate's food slot to the Plaintiff's food tray via the gloves or packaging material, as discussed in the previous R&R. Defendant again offers no scientific evidence to support his assertion that contamination could not occur under these circumstances. I note that other courts have taken judicial notice that "MRSA can be spread through direct contact with infected individuals or through contact with materials that have been exposed to the bacteria." *Kaucher v. County of Bucks*, 455 F.3d 418, 421 (3rd Cir. 2006).

In addition, Defendant's blanket statement and reference to policy that the food slots were regularly cleaned, with no evidence regarding the relevant time-frame, is not material evidence as to the possibility of contamination that day. Although Defendant posits that the slots were regularly cleaned, Plaintiff's and Mr. Winburn's affidavits contradict that evidence. Furthermore, even if they were regularly cleaned, that would not affect the potential contamination on October

8

22, 2007, since Defendant has not averred that cleaning occurred between the time he placed food into the MRSA inmate's food slot and the time he placed food into Plaintiff's food slot.

Finally, I suggest that the affidavit dated July 23, 2009, by the MRSA inmate (Doc. 45 at Ex. A), wherein the inmate states that he never wiped nor threatened to wipe any discharge from his MRSA-infected wounds on the food slot, is not material evidence that would render summary judgment appropriate.  First, Defendant would not have known whether the MRSA inmate had wiped any discharge or not at the time he delivered the food trays on October 22, 2007.  Second, the MRSA inmate's affidavit shows only that the MRSA inmate did not intentionally spread bacteria, but MRSA can be and often is spread unwittingly.

I therefore suggest that a genuine issue of material fact persists as to whether the Eighth Amendment was violated and thus that summary judgment should be denied.  *See Randles v. Hester*, No. 98CV1214, 2001 WL 1667821,*6 (M.D. Fla. June 27, 2001) ("there are materially similar cases which proscribe the exposure to of inmates to infectious disease or threat of future ills'"); *White v. Hinsley*, No. 05-594-MJR, 2007 WL 611195 (S.D. Ill. Feb. 26, 2007) (claim that Defendant intentionally placed a "spit hood" into Plaintiff's mouth that contained saliva of an inmate known to be infected with Hepatitis C exposed him to substantial risk under Eighth Amendment and thus, survived screening).

9

### b. First Amendment Retaliation

Plaintiff alleges that Defendant Kolb intentionally contaminated his food tray on October 22, 2007, in retaliation for Plaintiff having filed a grievance on October 16, 2007.[1] (Dkt. 1, ¶¶ 17, 48.)

Retaliation based on a prisoner's exercise of his First Amendment rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). A First Amendment retaliation claim consists of three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id*.

Defendant now contends that since Plaintiff's food tray did not enter the MRSA inmate's cell or come into contact with the MRSA inmate, there can be no adverse action. (Doc. 40 at 8.) However, I suggest that, for the reasons stated above, the procedure Defendant used to distribute the food trays and the other allegations surrounding the events of October 22, 2007, support at least a material question of fact regarding potential exposure to MRSA. Since the alleged exposure occurred close in time to the grievance having been filed, and Defendant has not raised any alternative non-retaliatory rationale for his conduct (he has simply disagreed that his conduct exposed Plaintiff to harm), I suggest Plaintiff has alleged sufficient facts from which a jury could determine that the motivation, at least in part, for Defendant's actions was retaliation. *See Lane v. Bell*, No. 05-CV-73273-DT, 2007 WL 2463346, *2-3 (E.D. Mich. Aug. 30, 2007) (denying

---

[1]The October 16 grievance referenced the dropping of Plaintiff's wrapped food items onto the floor of his cell, which was held not to pose any risk, let alone a substantial risk of harm to Plaintiff under the Eighth Amendment; thus, Plaintiff's remaining claims refer only to the October 22, 2007, events.

10

summary judgment where defendant denied all allegations but temporal proximity raised question of fact whether defendant forbid copying court documents and issued major misconduct ticket in retaliation). I therefore suggest that Plaintiff has sufficiently alleged and supported a First Amendment claim to survive summary judgment.

### 2. Clearly Established Right and Reasonable Conduct

As indicated above, I suggest that Plaintiff has proffered sufficient evidence to meet his burden under Rule 56 such that the Eight Amendment and First Amendment claims should proceed to trial. I further suggest that the right to be free from cruel and unusual punishment and the right to exercise First Amendment rights without fear of reprisal are sufficiently clearly established that a reasonable officer would realize that intentional exposure to contagions and such exposure made in response to the filing of grievances would violate these constitutional guarantees.

Where an inmate was intentionally exposed to contamination, "courts have found it unnecessary for a prisoner plaintiff to point to a 'prior case holding the very action in question to be unlawful'" to prove that no reasonable person would have believed his conduct to be lawful. *Randles* at *6 (finding the unlawfulness of intentional exposure to contaminated blood to be so readily apparent that defendant was not entitled to qualified immunity) (quoting *Powell v. Lennon*, 914 F.2d 1459, 1464 (11th Cir. 1990) (asbestos exposure)).

### 3. Conclusion

For all the reasons stated above, I recommend that Defendant's motion for summary judgment be denied as to both Plaintiff's Eighth Amendment claim and Plaintiff's First Amendment retaliation claim.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                 s/ *Charles E Binder*
                                                 CHARLES E. BINDER
Dated: September 24, 2009                United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: September 24, 2009                          By     s/Patricia T. Morris
                                                                        Law Clerk to Magistrate Judge Binder